Dewey, J.
The objection to the “ abstract ” of the policy introduced at the trial, furnishes no reason for a new trial. The promise in writing, upon which the suit is brought, recites the receiving of a policy, which was quite sufficient for the purpose of showing, prima facie, that a policy had been issued to the defendants.
It is then insisted, by the defendants, that, in fact, they were not the owners of the property insured, at the time of executing the policy; and so the policy did not take effect, and, therefore, no liability should attach to them to pay their note, or promise to pay such assessment, not exceeding $196.00, “ as the directors might, agreeably to their act of incorpora tion and by-laws, require.”
In ordinary insurance in stock companies, this objection if it existed, might entitle the party who had paid a premium, to receive back the same, as paid upon a consideration that *146 had failed. But it by no means follows that this principle exists in reference to the promissory notes given by the members of a mutual fire insurance company, as deposit notes,, and which form the capital, to a great extent, of these companies.
Here are mutual promises to contribute pro rata towards losses, limited only by the amount of the deposit note. It is upon the strength of these notes that insurances are authorized to be made. Upon these notes all assessments are to be made, pro rata, to meet losses. Herein is the great difference between these deposit notes and the payment of a premium to a stock company.
Again; upon the strength of these notes, the party becomes a member of the company, and acts as such at all meetings.
There may be, therefore, strong ground for taking a distinction between stock companies and mutual fire insurance companies, where the insured alone are members. Whether such deposit notes may not, under certain circumstances, be discharged as to future liability, it is not necessary to decide now. In some cases, as that of alienation, it is directly provided that it may cease, by surrendering the policy and paying all liabilities up to that time. So here, it may be that, upon a surrender of the policy, when the party found he had insured property not his own, and in which he had no insura-, ble interest, and payed all assessments and liabilities, he might from that time be discharged.
But this would be the extent of his right to be discharged from future assessments.
The party thus standing in this relation to a mutual insurance company, is estopped from setting up the want of an insurable interest in a policy, by virtue of which he has become connected as a member of the company, and his deposit note has become a part of the capital of the company, upon the basis of which all assessments are required to be made.
In point of fact, here, the policy was not a void policy, inasmuch as certain articles, namely, the clothing and the hay, named in it. did belong to the assured; and this would pre *147 sent a difficulty in the way of the defendants’ treating the policy as a nullity, and their note as wholly without consideration. As to the other portion of the articles insured, the defendants themselves resort to the peculiar nature of this corporation, as a mutual one, to sustain their position, that, as to such articles, there was not a valid policy. A contract creates an interest, and articles agreeing to buy the property may, under some circumstances, be quite sufficient to create an insurable interest if insured in stock companies; but as a lien for the deposit note cannot attach, in a mutual office, such policy is held invalid, as respects the liability of the company.
A like reason, drawn from the peculiar character of this company, may strongly demand the application of the principle, that the payment of the deposit notes be enforced, although a note given for the premium in a stock company could not be.
It was objected that, in case of insurable interest for part only of the property, an assessment upon the whole note would be bad. But we think not so, before a surrender of the policy, and payment of all existing liabilities.
This brings us to the further objection, that the assessment was not made in proper form. As to the period of time for which the losses were assessed upon the defendants, the views already expressed, as to the continuing liability until a surrender of the policy, and payment of all past liabilities, fully meet that point.
But the further point is still open, as to the mode of making the assessment and the authority from whence it issued.
As to the authority, the statute provides that all assessments shall be determined by the directors, and it was so done here. As to the basis of the computation of losses, and the deposit notes liable to assessment, we think it was a reasonable one; and that, from the necessity of the case, these computations are not to be required to be made by assessments made upon each occasion of loss, but upon a rule that will approximate to it as near as is practicable and reasonable, and we think this did so.
We think no valid objection is shown as to the form of the *148 assessment, and that the arrears of the assessment on the defendants is sufficiently shown by the papers introduced and the supplementary evidence, to justify the directions of the presiding judge, and authorizing the jury to find a verdict for the plaintiffs, for the assessment of $31.86, made July 15,1849.

Exceptions overruled, and judgment on the verdict.